Okay, I found my notes and I'm ready to go whenever you are. Thank you. May it please the Court, Phil Talmadge here representing Espresso Supply. When it denied Espresso Supply's preliminary injunction and dismissed its action entirely under Rule 12b-6, the District Court erred in failing to apply well-established Washington contract interpretation principles on extrinsic evidence as to why the parties in their 2016 International Distribution Agreement amended the renewal language from that that was present in the 2012 version of that agreement providing for annual renewals. This extrinsic evidence was key to an understanding of a paragraph 7.1. Now, extrinsic evidence is only in the complaint to a very limited extent. So it's only before us on the motion to dismiss to a limited extent. Is that right? Actually, not so under Washington law, Your Honor. Under Washington law, extrinsic evidence is always admissible. No, but it's admissible, but I'm talking about 12b-6 federal law as to what we look at when we are judging a motion to dismiss. Exactly. And as I understand it, all you have in the complaint is an assertion by an allegation as to what the plaintiffs wanted when they negotiated, and an attached e-mail, but the telephone calls and other representations are not in the complaint in any form. Well, they were before the District Court, however, Your Honor, and the District Court considered them. They're not in the complaint. So for current purposes, I mean, I'm not sure how much it matters. You might be able to, you could probably amend the complaint to put them in, so maybe we should consider them. But technically speaking, they're not before us at this point on the motion to dismiss. Well, and to remind the Court, we asked to have the opportunity to amend the complaint, to add those very facts into the complaint, and the District Court denied it. So I think the Court should consider those extrinsic facts. Because you couldn't amend them. Because we couldn't get them in because the District Court refused to do that. So your position is that amendment hasn't been shown to be futile, right? Correct. And the e-mail that you've got is at ER? 92, I believe it's 92 and 93 and 98 of the record. I've got it.  Thank you. I could get that site for exactly, Your Honor, but I think it's there. There was an e-mail, there was also the declaration from the executive for Espresso Supplies to her conversation with her counterpart, the former Smartco executive, by whom the contract was negotiated. Was the declaration attached to the complaint, counsel? It was not. Okay, so that's what we're trying to get at. I mean, even if you're just in the land of not amending, you've got the allegations in your complaint and you have the e-mail. And I don't think there were other attachments, right? No, I don't think there were, Your Honor. But, again, that would have been the subject of the amendment of the complaint that would have provided that information. I appreciate that. I'm just trying to keep the bucket straight. My second more abstract line of questions is I find the Washington law, the case law on extrinsic evidence and language extremely confusing. Welcome to the club, Your Honor. Right. Berg was the starting place. The court decided initially in Berg that it wanted to consider context. Berg seems very clear. And then the same judge five years later writes the Hearst opinion, which seems to backtrack on a great deal of what Berg said. Correct. So where does that leave us? Well, it leaves us with this. It leaves us with Hearst Communications. That was the most definitive statement by the Washington Supreme Court on this issue of extrinsic evidence. And where we are is at this point. Context evidence is always admissible, even without regard to ambiguity in the language of the contract, to do certain things, to look at the objectives of the contract, to look at the circumstances surrounding its making, to look at subsequent conduct, to look at the reasonableness of interpretations, to look at negotiations, usages of trade, and course of dealing. And the district court here at Excerpt of Record 10 made it clear, I'm not considering anything about this. And had he done the – Forgive me for interrupting. Because the district court thought there was a threshold, right? He believed there was. Requirement that the four corners needed to show ambiguity. Am I paraphrasing that separately?  I think he did. So that's what I think of as the common law parole evidence rule that we all learned to pass the bar exam. Correct. And Washington law went past that in Burke. Yeah. And reaffirmed that point in Hearst Communications and a court of appeals decision, Spectrum Glass, that we've cited to the court also makes that clear. But is your position then that under Washington law, it's improper for a court to ever look at contract language and say, this clearly says X? No. The court can look at that, but the court also has the obligation under Washington law to look at that extrinsic evidence as to what the parties were attempting to do to give meaning to the language of the contract. Because contracts aren't negotiated in a vacuum. Well, that makes sense as a matter of proof at trial. And I guess this follows up on Judge Berzon's point of we're here on a motion to dismiss. So while it's admissible and we can talk about that in the evidentiary presentation of the dispute, I guess I'm still struggling with what does that mean in terms of your complaint? Because you've got the contract, you've attached it as an exhibit, so of course we can look at the terms of the contract. The district court thought that it clearly said one thing. And you're saying that under Washington law, the district court can't do that. It has to do this bigger evidentiary analysis at the motion to dismiss stage. And it does at the 12B6 stage. Are there any set of facts beyond a reasonable doubt upon which a party can make a claim? And in this case, there are such facts. Could you tell us, to change it a little bit, what – well, two things. First of all, do you agree that the contract is unambiguous on its face? No. Even on its face. Yeah, I don't agree with that as a proposition, Your Honor. The 2012 IDA, and this goes, again, to extrinsic evidence, was clear. Five years flat, five-year renewal. This language in 7.1, the language says renewable each year. SmartCo reads each year out of the contract. If it's flatly five years, why is there a renewability provision annually in the agreement? Well, it doesn't say renewed each year. Renewable each year. It says renewable, and I think the district court viewed this as, yes, but it wasn't renewed. I mean, you know this, right? So that's the – That's the argument. But the argument, the point that the parties made, and the contemporaneous understanding of the parties, signed off, you know, each party, Espresso Supply and SmartCo, signed off on this agreement at the bottom line each time. They understood that what they were doing was entering into what was called an evergreen provision. Right, so exactly how it – That's the extrinsic evidence, though. So go back to Judge Berzon's question, right, which is really important for me, about why the district court was wrong in thinking that there was ambiguity or was not ambiguity in that term. And your focus is on the word renewable. Each year. Well, the district court's was, and your focus is on each year. Each year. In fact, what SmartCo has argued and what the district court adopted was the language of the 2012 IDA, five years, renewable every five years. That's not what the parties entered into. Well, not necessarily. I mean, it's quite confusing, actually. He could have been saying it's renewable each year for extending the term for a year, but it has to be agreed upon. I mean, that's – I think that the SmartCo does move around somewhat as to what this argument is. But at some points this argument seems to be, well, yes, it's a rolling five-year term, but it has to be agreed upon before each year – in each year in order for it to extend another year. Well, that's their contention, but it's belied by their own executive. Mr. Gross is the executive vice president who negotiated the agreement, and he believed they were entering into an evergreen provision. Well, the question is whether renewable necessarily means – tells you how you renew it. I mean, let me ask a background question. All the more reason why extrinsic evidence is important. I have a background kind of – you know, to go back to Judge Christian's observation, and I'm a generalist, and I want to know why anybody puts a renewable clause in a contract anyway, if it only means you can agree on it. Because, of course, you can agree on it. So why do you put anything in a contract that says this contract is renewable after five years if all you mean is you can agree to renew it? Because, of course, you could, but you could also not. That's a good point. But this, again, goes to the point that this doesn't happen in a vacuum. The parties had an agreement. SmartCo decided abruptly, we're going to get out of – we're going to terminate this agreement. We're kicking you out, Espresso Supplier. Right. So isn't the answer to Judge Berzon's question is the reason you do that is because your client was worried about being left out – hung out to dry. Absolutely. It was worried about two things. It was worried about the fact that SmartCo set up a competing entity and it did this abrupt change of agreement. Right. So your team want it renewed annually unless the parties agreed otherwise. And that's why the 2016 language is different than the 2012. My question was supposed to be somewhat – should be helpful to you because renewable construed the way the district court did is just a tautology. Absolutely. But it's in contracts all the time. So why is it in contracts all the time? That I can't speak to, Your Honor. I'm an appellate lawyer, generalist like you are, and I understand that that's a – You look in the dictionary definitions that were attached. Many of them have contract examples where it says this contract is renewable. And, of course, it's renewable. So why is it in there? Well – But that is – I mean – Except for the fact that these do show up all the time. One would think that one would not want to interpret it to just mean you can agree on it if you wanted to because, of course, you can agree on it if you wanted to, which supports your notion that it meant something more than that. It did. And the language is different. What we do know from the complaint is the 2012 language is different than the 2016 language on renewability annually. We knew what the parties were attempting to do. They were attempting to deal with this problem that Judge Christin pointed out, the SmartCo pulling the rug out from under Espresso Supply when Espresso Supply was engaging in international distribution of the product. And you had this problem of the question about a competing interest. Negotiations dealt with both issues. Tell me how this would operate. I mean, the other thing that's strange here is that there is no provision for notice or when – I mean, you simply – how would this contract ever expire or be terminated? You're assuming, but it's not in there, that one party – if a party doesn't want it before the one-year term, they can stop it from renewing. There are two ways, Your Honor. There's a termination for cause provision in the agreement. And there's also this renewability. The party could say, we're not renewing. That allows a five-year wind-down provision. But, you see, it doesn't say that. I mean, that's the other odd part. Ordinarily, and there are some examples somewhere in the record of these kinds of clauses, they would say something like it renews automatically unless X. Right. Isn't that ER-98? Isn't ER-98 the email that was attached to the complaint? Yes. Okay, so that says we will have a five-year leasing contract that is renewed yearly. That's right. But that's the email I can consider. That's the email you can consider. There's the additional statement that confirms that later on, a few years later. That they were using renewed and renewable interchangeably, or somebody was. But still, there's a gap there, which is, how does it stop? You say, we're not renewing the agreement, and it winds down over five years. That was why it's called an evergreen provision. And when do you say that? Well, annually. And, of course, SmartCo reads each year out of this agreement. They can't explain to you what each year means in the context of the actual language of Paragraph 7.1. I mean, I thought they did. I thought they said, every year we can agree to extend it for one more year. But we have to agree. It's renewable unless somebody says no. And that's the way all the parties understood it to be, Your Honor. Well, I think what your team's argument, now you're saying something different than what I understood. From ER-98, I understood your team's argument to be it's a five-year leasing contract renewed annually unless somebody says no. That's correct. So it's a five-year, five-year, five-year block. Five-year, five-year, five-year block. And if somebody says no. That's right. Then your client thought it was negotiating for a five-year wind down. That's right. And bottom line here, just the bottom line, and because I'm getting to the end of my time, the bottom line is, for purposes of a 12b-6, beyond a reasonable doubt, is there no set of facts upon which. It's not beyond a reasonable doubt. Well, it says. Actually, Vasquez. That would be good for you. Vasquez says that. But you have to show that an amendment will be futile, right? Yeah. But you're basically arguing not for a conclusion but for the fact that a district court should be considering the extrinsic evidence. Absolutely. And this was premature to dismiss on a 12b-6. It's way too early, way too early in the process. This wasn't summary judgment. This was not a circumstance at trial. This was a circumstance where the parties, you know, on the face of it had completely differing, you know, assessments of this. Mr. Koo, the President's testimony was not taken by deposition. You did have an indication from Mr. Gross who negotiated the agreement that he believed our position was correct from SMARTCO, Gross from SMARTCO. And, therefore, 12b-6 dismissal is way too early and a preliminary injunction was appropriate because if we're correct that there was a legal basis to sustain our position. Well, the preliminary injunction. Then we were entitled to an injunction. I mean, you obviously would have to remand. Yes. To the district court. Yes. So we're not even going to decide that. And more than that, I don't know, when I came away with contracts won with is that an injunction, i.e. specific performance, is extremely unusual in a contract case because damages are available. In a case, Your Honor, where somebody says, and it's admitted in their brief at 5, that they've stopped taking any orders for these products from Espresso Supply, and 75 percent of the business of Espresso Supply is going to be. But it's still all compensable by damages, and that's what equity law says. Well, not if you're in receivership and maybe in bankruptcy as a consequence of these circumstances. So you're over your time. I am. I ask the court to reverse the district court's 12b-6 dismissal and the decision on the preliminary injunction. Thank you. You're welcome. For planning purposes, stay tuned because we're going to put another minute on the clock for your rebuttal. Thank you. Not a problem. We took you over. May it please the Court, Joe Mekas. Is it contested that we can look at ER-98? Excuse me, Your Honor. Well, I'm looking at this e-mail that was attached to the complaint, ER-98, and I think that Judge Berzon's point is well taken, and we can talk about that later, about the other extrinsic evidence. But didn't the district court have the allegations in the complaint and the allegations, I'll say allegations, at ER-98 to contend with at the 12b-6 level? Yes, Your Honor. Okay. So can you engage with this sentence, we will have a five-year leasing contract that is renewed yearly? Sure. A couple of things. Okay. That e-mail took place three weeks before the signing of the agreement. The contract specifically excludes or disclaims any prior negotiations or agreements. Now, certainly in the meantime, to the extent that reflected what appellants are arguing, that might have changed. But what I would submit is that that e-mail doesn't really say automatically. It says renewed, and that's consistent with the idea that theoretically, at least, on a yearly basis, the parties could agree to another five-year term. But why would you put that in a contract? Of course they could do it. Why would you put it in a contract? That's a very good question, Your Honor, and I wasn't there. Like you, I've seen that in many contracts. Right. But looking at it from the plain language, the plain and ordinary meaning, that Washington law and parole evidence is a little bit ambiguous. But what it's very clear about is that you have to look at the plain and ordinary meaning, and you can't use parole evidence to vary or contradict or add to the evidence. Well, Erg certainly says otherwise about that. Yeah, wait a minute. And this is not an atypical adaptation of the parole evidence rule throughout the Ninth Circuit. So we see this a lot. Yes. All right. So it seems to me that the district court, opposing counsel's argument certainly, is that the district court looked at the four corners and said it's unambiguous and stopped, and his argument is that the district court didn't consider ER 98. Do you agree with that? I don't agree with that. The district court ref— Well, can I—I have a piggyback question because in response to my first question, I think you said the district court couldn't consider 98 because the contract says an email executed three weeks before the contract couldn't be considered. So I am confused about your position on ER 98. I think the answer is that the district court can look at the parole evidence, the extrinsic evidence, to decide whether it can affect the outcome, whether that parole evidence creates a context that would lend itself to a different— I mean, it at least illustrates that when this person was writing this email, he didn't think renewable and renewed meant two different things because he said renewed. And the district court said renewable is—it doesn't mean renewed. It means it could be renewed, but not that it is. Well, again, that email was three weeks before the parties entered into the actual— Which is the argument that you can consider this or not. So you really are flip-flopping on this, and I need your position, please. I think the district court certainly had in front of it a complaint that it contains facts. The district court must look at those facts in deciding whether to dismiss the complaint or not. When the district court looked at those facts, it said that doesn't change the plain meaning of what the parties wrote. You're spectacularly not answering my question. I know the district court had the complaint in front of them at the 12B6 level. What I don't know is whether your position— Yes, the district court could look at that, Your Honor. And is it your position that the district court did not or did? I believe the district court did look at that, Your Honor. The district court said he reviewed the entire record. And decided that there was no ambiguity. The district court tells us he decides there's no ambiguity. The district court looked at the plain language of the term renewable, concluded based on dictionary definitions, and just common sense, I think. It's capable of—even if—it seems to me even on its face it's ambiguous, or at least arguably so, because renewable may mean capable of renewal, but does it tell you how it's renewed? Does it say it has to be by agreement? No. Does it say it couldn't be by one party? No. Does it say it couldn't be automatic? No. It just—it doesn't say. Well, the record is clear, Your Honor, that none of the parties attempted to renew the agreement before it expired after five years. Well, I know, but if—so what—but if the proposition is renewable means that it has to be agreed upon by both parties, it doesn't say that. Well, it also doesn't say—what the—what the appellants are arguing is that this is an indefinite contract. It's a perpetual agreement with a five-year notice provision. And if that's what they meant, why didn't they say that? Right. So I think the way they're interpreting— I have a lot of questions about why people didn't say it. But here we are, you know, and that's why people wind up in litigation, and it seems to me that their interpretation is that it was perpetual, right, that it will be renewed annually unless somebody says otherwise, right? And then it's a five-year term. I think that's their position. That's what they're saying. Yeah. Yes, I understand that. Well, that's consistent, though, with ER 98, isn't it? We'll have a five-year licensing contract that is renewed yearly. Isn't that also consistent with our interpretation, which is that the parties could get together on an annual basis? For example, imagine Espresso Supply. I think it is. Well, if Espresso Supply had come to your position— That's what makes it ambiguous. That's what makes it ambiguous, right? Well, the parties both agree— Ms. Berline and I agree. The parties both agree it's unambiguous if you look at the appellants' position. Well, yeah, but parties do that all the time. They say it's unambiguous and we win. And the other team says it's unambiguous and we win. And, you know, that's how we make our living. But isn't that right? Isn't it consistent with your party's view and the opposing council's view when I look at ER 98? I don't think it's consistent with their view at all because it changes the plain and ordinary meaning of the term renewable to mean automatically renewed. Can you engage in his argument? The opposing council's argument is that you're reading the last two words out of the sentence. I'm not reading the last two words out of the sentence because, again, the parties could, on the first anniversary of the agreement, one of them could have sent an email to the other saying, I'd like to renew the agreement for another five-year term. The other party could say right back and say, no, we're not inclined to do that. That didn't happen. And also, if you think about the consequences of the argument that they're making, is on day one, if there was going to be a five-year tail on this agreement always, on day one, the day that they signed this agreement, we would have also had to provide notice that we were terminating in five years. Well, only if you knew you wanted to terminate in five years. You're doing this retrospectively, and that's not how we do it. The question is at the time of contracting, what was the party's intent? At the time of contracting, the parties agreed to a five-year initial term. I don't understand that point. Right. You'd have to give the notice before the one-year renewal but not on day one. I'm sorry. I missed that part. You'd have to give the notice before the one-year renewal but not on day one. And that would give them another four years, which would be consistent. And that is exactly their position. That would be consistent with what they've said that they needed in terms of an agreement, was that they would need time to ramp down. If on the first anniversary the espresso supply had said, we'd like to renew this agreement, and SMARCO had said, no, we don't want to renew the agreement, then they would have had four years to ramp down the agreement at that point. Right. So what's wrong with that? And they could have come back the following year and asked for another renewal, and we might have said, oh, gee, sales have gone up. But you have to also imagine this from — I'm not understanding what you're saying, that you're arguing their position now, which is that they needed at least a four-year attail. I'm not — I'm accepting that argument for purpose of — I'm accepting it for purpose of argument, Your Honor. Okay. And? And I'm suggesting that even with my interpretation, the interpretation that the parties had to agree to renew the contract on a yearly basis, that they still would have had that time to ramp down. What happened was the — as time went on, the defendants could then simply say, no, we're not going to do it, and that's what happened. I mean, what happened was that they ended up with no time at all to extricate themselves. At least that's what they allege, and we're at 12B-6. Right. We're at 12B-6, and the district court looked at the — again, we come back to the plain language of that term, renewable, and I know the court may have a question about that. Let me ask you another — to add something else. Today is going to get easier in six minutes. There's also the language — there's also the material that is not in the complaint but was in the summary judgment record in terms of extrinsic evidence, including this supposed phone call with Mr. Gross who agreed with their understanding. If that were in the complaint, would your argument be otherwise? No, I don't think so, Your Honor. I mean, if we look at the Washington law on extrinsic evidence, I mean, if you look at the Spectrum Glass case that both parties cited with approval, the court in that case looked at very — almost identical evidence, where one of the parties testified that my understanding was X and their understanding was X. And the court said, no, you can't look at that kind of evidence to add a term to the agreement, a term that would change the agreements — would change — Well, I mean, there are degrees, right, of changing agreements. I mean, in Hearst, for example, they really wanted to just change the agreement to the opposite of what it said, based on extrinsic evidence. I mean, here you have a word, one word that you're relying on, which has a definition but doesn't fill the universe here because it doesn't explain how it's getting renewed. It just says it's renewable. It doesn't say by mutual agreement. It doesn't say by unilateral invocation. It doesn't say automatically. It doesn't say how it's getting renewed. Right? So why — so some clarification is necessary. You're simply making an assumption that it means by mutual agreement. Right? I don't believe so, Your Honor, because if the parties had intended — that's an additional term to say that this contract is going to be renewed automatically. They knew — the parties knew how to use the word automatically. If we look at the prior agreement, that's the term that they used. Also, this agreement has another term that actually — But parties could agree for a unilateral renewal. They could have. That's the point that she's trying to make is, like, this contract tells us not at all how renewal will happen, and you want us to assume that it means mutual agreement. But it could mean other things. Reasonably, it could mean other things. And what in this language tells us that it only means your mechanism? Well, whether it means unilateral or bilateral, none of that happened. Whether it — Mr. Counsel, that goes back to you wanting to do this Monday morning quarterbacking thing. Right? And we really are supposed to look at what the parties intended at the time of contract. So what actually happened at the end, right, it doesn't help me very much, because opposing counsel's position is going to be, without even coming back to the podium, it's pretty clear his argument is that his team didn't raise their hand because they understood that the contract was as indicated in ER 98, a five-year term that is renewed annually. Right? So the fact that these events didn't play out the way you mentioned or that your team would have had to raise its hand to terminate, you know, one year in, that doesn't help us. That just tells us that the parties interpreted the contract differently from the outset, maybe. Well, I would ask — Because that's how they acted. I guess my response to that is we look at this contract divorced objectively on its face. What would a person reading this contract, if somebody else had come in and bought the company, for example, and read this, would they have understood that they have to give a notice to prevent this contract from becoming a five-year term to an indefinite term? Well, that gets to the point, right? I read renewable, and I get the argument that you're making that that means some action. But that could be on the voice of one, on the voice of two, on silence. Why can't all three of those be the possibility of how this is renewable? Well, I guess, Your Honor, my position would be renewable means, just like the district court said, capable of renewal. I'm saying I accept that. And then I'm just saying, like, and then what's the mechanism for the capacity for renewing? Is it the voice of one, two, or nobody? Nobody's speaking up at all, and then it's renewed. And you've argued that the automatic, the silence, would be an extra term in the contract. But I don't understand that, I guess, because, you know, whether it was unilateral or bilateral, would that be an extra term in the contract? We have no specificity on what the mechanism is. I come back to what I started with, which is a contract that is for an indefinite term that has a five-year termination provision is not what's in this agreement. This agreement doesn't say that it's that. And if the parties had meant that that's what they intended, they should have said that. But to hold that a party looking at this agreement five years later and saying this is a five-year term, renewable, well, we choose not to renew it. No one has asked us to renew it. Well, I would agree with you that the parties should have been more clear. But the point is, I guess, by not being more clear, isn't that creating ambiguity? I disagree. I think the term renewable assumes that the parties will agree, just like the district court said. I think you have a strong argument on renewable for my one out of three votes. I think you have a strong argument if you only look at renewable. I'm trying to figure out a principled reason, given Washington law being what it is, that the district court was free to not consider, and I'm not so sure he did not consider, but 98, ER 98, because it says we will have a five-year leasing contract that is renewed yearly. And so since you're almost out of time, what's your best run at convincing me that the district court considered this, or is it your argument that it was such a material deviation, you know, to Judge Berzon's point about there's ambiguity and then there's ambiguity, there's entirely new terms. What is your argument about this sentence, that it didn't need to be considered, that it was a bridge too far, it changed the four corners too much, or what is it exactly? Well, I think what I said earlier, which is it's consistent with the idea that the parties would annually consider whether to renew. And also, it's part of the negotiations. Even if you didn't consider it that, it's part of the negotiations that change over time. Oh, go ahead. Well, this is a 12b-6 again, so whether the district court looked at it or not is really not the question, right? The question is if we look at it and we think that it would plausibly, as extrinsic evidence, inform the interpretation of the language, then at least the 12b-6 shouldn't have been granted. No. So I don't think what the district court did or didn't do is relevant here. I take back what I said about agreeing with Judge Berzon, but go ahead and answer her question. I'll give you one more. So the question there then is what should we do with this? And I would like to say also what should we do with the fact that there is other evidence that is in the record or that we know could be added to the complaint, that something was meant other than what you're saying is the plain language. Let's assume we thought that putting together the gross telephone call in the declaration and this email that there was evidence that SmartCo understood or both parties understood the contract in the way that Espresso was saying. Is your position that that's just completely irrelevant because of the plain language? Is that your position? That's not exactly my position, Your Honor, if I may explain. Okay. I want to answer your question. I think when you look at the district court does have to consider extrinsic evidence to decide whether extrinsic evidence is amenable to interpreting a specific term. I think what the district court did here is he looked at the Hearst case. Let's leave the district court out of it, okay? As I just explained, we have a complaint that we are looking at. Let's leave the district court out of it, okay? And I think what I'm suggesting to you, Your Honor, is if you look at the Hearst case and you look at the Washington Laws of Contract Interpretation and the principles that they say that extrinsic evidence has to determine the meaning of specific words and it can't be used to show an intention independent of the instrument or to vary, contradict, or modify the written word. And what I'm suggesting is the term renewable, to add automatic to it, that that varies, contradicts, or modifies the written word. And with that, I'll sit down. So the answer to my question is, yes, we should ignore those two pieces of evidence. They're not relevant to the construction of the contract because it's plain in its face. That is your position. I think that's right. I think the court looks at it and considers whether or not that's sufficient to change the You're saying nothing could change it. That's what you're saying, that nothing would change it. I'm suggesting that there may be situations where extrinsic evidence I know, but in this case, nothing could change it. Nothing can change it in this case, Your Honor. Yes, I agree with that. All right. So now we're clear. Okay. I was wrong about just six minutes, but thank you for your patience with our questions. Thank you. Thank you. Just a couple of observations on rebuttal. First, actually, as to extrinsic evidence, Mr. Meck is understanding of Washington Laws flatly incorrect. There doesn't have to be an ambiguity in the agreement before extrinsic evidence can be considered. And I recognize Judge Berzon's concern that you don't even get to that point. But here, the district court basically said, I'm not considering extrinsic evidence at all. Right. So you're arguing there was a mistake of law, which is what I was getting at a minute ago. And Judge Berzon's point is that we're doing this de novo. Yeah. Okay. So there's that concern. And the district court here followed up on that error by not allowing amendment of the complaint that would have added the additional evidence that we know existed, that would have documented the understanding about Paragraph 7.1 of the agreement. It wasn't just the Espresso Supply Team's understanding. It was the Smartco Team's understanding as well. Because Mr. Gross was the guy who negotiated the agreement. He initialed every page of the 2006 agreement. And we have ER 98, the e-mail in which he says, this is what we understood. Coupled with ER 94, I think it is, which is the testimony from Laura Summers, who was the executive at Espresso Supply in her conversation with him, where he agreed. It was an evergreen provision. That's what the parties understood they were entering into. There was a basis for relief under the terms of the complaint. 12B6 dismissal was way premature, and the court should reverse accordingly. Thank you. Thank you both. It's a very interesting case, and we'll take it under advisement.
judges: BERZON, CHRISTEN, FORREST